## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

DANA BARBER FAUL                    Civil Action No. 6:19-1221

versus                             Judge Michael J Juneau

SCOTT FONTENOT, ET AL.             Magistrate Judge Carol B Whitehurst

### REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss for Failure to State a Claim and/or Motion for More Definite Statement [Doc. 7] filed by defendants Richard Daigle, the City of Eunice, Randy Fontenot, and Scott Fontenot. The motion is opposed by plaintiff Dana Barber Faul [Doc. 9], and the defendants filed a Reply brief [Doc. 12]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART, as explained hereinbelow.

### I.    FACTUAL BACKGROUND

The instant lawsuit was filed by the plaintiff, Dana Barber Faul, the surviving sister of the decedent, John Paul Davis. Faul claims that on or about September 20, 2018, Davis was arrested for disturbing the peace by an unnamed Eunice City police officer and was detained at the Eunice City Jail. Faul alleges that while at the jail, Davis verbally announced that he intended to kill himself and was subsequently placed on suicide watch and stripped of his clothes by an unnamed employee of the

1

City of Eunice.  Faul further alleges that Davis was placed in the same area of the jail as other inmates, where he obtained a jumpsuit or some other article of clothing and used that clothing to hang himself on the same date he was arrested.  Davis died on October 9, 2018 as a result of his injuries.

Faul alleges that after Davis stated his desire to commit suicide, he was not placed in an "isolated and/or confined cell," where he would have been unable to gain access to anything he could potentially use to assist him in committing suicide and where he could have been "closely and constantly" watched by guards or employees of the City of Eunice.  Faul alleges that Davis was not transferred to a mental health facility, but instead was "placed in the same area of the jail as other inmates."

Faul filed the instant lawsuit, naming as defendants Scott Fontenot, individually and in his official capacity as the Mayor of the City of Eunice; Randy Fontenot, individually and in his official capacity as the Chief of Police for the City of Eunice; Richard Daigle, individually and in his official capacity as Deputy Chief of Police for the City of Eunice; and the City of Eunice, alleging violations of Davis's constitutional rights under 42 U.S.C. 1983.

Defendants filed the instant motion to dismiss, arguing (1) Faul's complaint fails to allege facts sufficient to state a claim for which relief can be granted under 42 U.S.C. 1983 against Mayor Scott Fontenot, Chief Randy Fontenot and/or Deputy

Chief Richard Daigle in their individual capacities; (2) Faul's allegations against Mayor Scott Fontenot, Chief Randy Fontenot and/or Deputy Chief Richard Daigle in their "official capacities" are redundant as a matter of law, because the City of Eunice is also a named defendant; (3) Faul's allegations fail to state a viable *Monell* claims against the City of Eunice; and (4) Faul's Complaint asserts impermissible claims against a "group" of defendants, without specifically articulating which purported defendant is allegedly responsible for what complained of conduct. Defendants seek dismissal of the plaintiff's claims for failure to state a claim upon which relief can be granted, or alternatively, that plaintiff be ordered to amend her Complaint to assert specific facts as to each defendant to state a viable claim.

## II.    LAW AND ANALYSIS

### A. Legal Standard

#### 1. <u>Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## 2. __Section 1983__

United States Code Title 42, Section 1983, creates a cause of action for an individual whose constitutional rights are violated by a person acting under the color of state or federal law.  The purpose of §1983 is to deter "state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole,* 504 U.S.

158, 161 (1992). Thus, "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Reitz v. City of Abilene*, 2017 WL 3046881, at *11 (N.D. Tex. May 25, 2017), *report and recommendation adopted*, 2017 WL 3034317 (N.D. Tex. July 17, 2017), citing *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). To survive a motion to dismiss a §1983 claim for alleged deprivation of constitutional rights, the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867-69 (5th Cir. 2012) (en banc). *See also James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008), *citing Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000) (to state a Section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.").

A plaintiff, moreover, may hold a municipality or local government entity liable under §1983 "only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Municipal liability does not attach merely on a theory of respondeat superior or because an employee committed a tort.

*Pembaur*, 475 U.S. at 479.  A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.  *James*, 535 F.3d at 373, *citing Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999).  A supervisor is not personally liable for his subordinate's actions in which he had no involvement.  *Id.* at 443–44. Requiring a plaintiff to identify a policy or custom that caused his or her injury "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).  State actors may defend themselves by claiming they have qualified immunity for their actions, as long as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

There is a heightened pleading standard for cases brought under §1983. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  In discharging this burden the plaintiff must satisfy a two-prong test.  *Id.*  The plaintiff must allege that defendants committed a constitutional violation under current law, and that defendant's actions were objectively unreasonable "in light of the law that was clearly established at the time

of the actions complained of." *Atteberry v. Nocona General Hosp*., 430 F.3d 245, 253 (5th Cir. 2005). For the law to be clearly established at the time of the action, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

**B. Analysis**

**1. Official capacity claims against Scott Fontenot, Randy Fontenot and Richard Daigle**

In her opposition brief, Faul concedes that her claims against defendants Scott Fontenot, Randy Fontenot, and Richard Daigle in their official capacities are redundant, inasmuch as the City of Eunice was also sued. Faul does not oppose the dismissal of her claims against these defendants in their official capacities.

It is well-settled that a lawsuit against a municipal official in his or her official capacity is simply another way of alleging municipal liability. *Howell v. Town of Ball*, 2012 WL 3962387, at *4 (W.D.La.2012), *citing Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). When the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.2001); *Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir.1996);

7

*Broussard v. Lafayette City-Parish Consolidated Government*, 45 F.Supp.3d 553, 572 (W.D.La. 2014).

Accordingly, the claims against Mayor Fontenot, Chief Fontenot, and Deputy Chief Daigle in their official capacities are redundant of the claims against the City of Eunice and should be dismissed.

### 2. *Monell* claims against the City of Eunice

As stated herein, a plaintiff may hold a municipality or local government entity liable under §1983 "only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).  *See also Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978).  Municipal liability does not attach merely on a theory of respondeat superior or because an employee committed a tort.  *Pembaur*, 475 U.S. at 479.  Therefore, the City of Eunice cannot be sued and subjected to damages unless its official policy or custom caused the plaintiff to be deprived of a federally protected right.  *Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997).  Therefore, in order to support a claim based on the existence of a custom or policy, plaintiff must plead facts to show that (1) a policy or custom existed; (2) governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and

(4) the custom or policy served as the moving force behind the violation. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996). Plaintiff's description of the policy or custom and its relationship to the alleged underlying constitutional violation cannot be conclusory; it must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). Plaintiff must establish that her claims are based on defendants' official policy, not the policy of an individual official. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). A plaintiff may not simply assert conclusory allegations about a policymaker, and then contend that such allegations are sufficient to withstand a Rule 12(b)(6) motion to dismiss. To avoid dismissal, the plaintiff must plead specific facts rather than conclusory allegations. Conclusory allegations simply are insufficient to withstand a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992); *Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005).

In their motion, defendants argue that the plaintiff's allegations concerning the policies and customs of the City of Eunice are too vague and conclusory to withstand dismissal. Defendants argue that to the extent the plaintiff is complaining of a policy or lack thereof, the Supreme Court has never recognized a constitutional right to suicide prevention screening or protocols, citing *Taylor v. Barkes*, 135 S. Ct. 2042, 2044-45 (2015) (holding that an incarcerated person's right to the proper implementation of adequate suicide prevention protocols was not clearly established

in the Third Circuit as of 2004). Furthermore, defendants argue the plaintiff has not pled sufficient facts to show that any policy was the moving force behind Davis' suicide.

Plaintiff responds that, without having the benefit of discovery to determine the policy-making authority and process within the City of Eunice, she has asserted claims, "based upon information and belief, that the defendants, including the City of Eunice, had a policy of not properly monitoring inmates who are a suicide risk and of placing inmates who are a suicide risk in cells and common areas where they have access to other inmates and things that could potentially be used to assist them in committing suicide." (Doc. No. 1, ¶13). Plaintiff points to the following portions of her Complaint wherein she alleges the following:

11.

The incident sued upon herein was a result of the negligence, *willful conduct* and/or gross negligence of defendants, SCOTT FONTENOT, individually and in his capacity as Mayor of the City of Eunice, CITY OF EUNICE, its agents, employees and/or representatives, RANDY FONTENOT, individually and in his capacity as Chief of Police for the City of Eunice and RICHARD DAIGLE, individually and in his capacity as Deputy Chief of Police for the City of Eunice, **in failing to properly implement procedures to and in fact monitor its inmates (including the decedent, John Paul Davis), failing to place inmates who are under a suicide watch (including the decedent, John Paul Davis) in a proper and safe cell and/or in an isolated cell or place, failing to transfer suicidal inmates and inmates who are under a suicide watch (including the decedent, John Paul Davis) to a mental health facility and failing to provide and implement policies, procedures and practices to provide for observation, care, safety and supervision of inmates on suicide watch (including the**

**decedent, John Paul Davis) at the Eunice City Jail (emphasis added).**

12.

The defendants, Scott Fontenot, individually and in his capacity as Mayor of the City of Eunice, the City of Eunice, its agents, employees and/or representatives, Randy Fontenot, individually and in his capacity as Chief of Police for the City of Eunice and Richard Daigle, individually and in his capacity as Deputy Chief of Police for the City of Eunice, are liable for their negligence in failing to properly train and/or supervise the agents, employees, representatives, guards and police officers that worked at the Eunice City Jail, specifically the police officers and guards that were on duty at the Eunice City Jail on September 20, 2018 and responsible for the safety and care of the decedent, John Paul Davis.

13.

On information and belief, the defendants **had a policy of not properly monitoring inmates who are a suicide risk and of placing inmates who are a suicide risk in cells and common areas where they have access to other inmates and things could potentially be used to assist them in committing suicide.**

16.

Defendant, City of Eunice, is directly liable for the acts complained of herein under Section 1983 due to its policies, m procedures, and practices and its grossly negligence hiring, training and supervision of the Eunice City Jail and its employees, agents, representatives, guards and police officers as well as its failure to properly fund and staff the Eunice City Jail. **Defendant, City of Eunice, knew or should have known about the policies, procedures and practices at the Eunice City Jail. Defendants, City of Eunice, is also vicariously liable for the acts of complained of herein.**

*See* Doc. 1, Complaint, ¶ 11, 13, 16.

Plaintiff further claims the defendants failed to properly train and educate their employees (Doc. No. 1, ¶14C)); failed to supervise their employees (Doc. No. 1, ¶14D)); failed to supervise inmates (Doc. No. 1, ¶14E)); failed to have proper procedures in place so as to avoid an incident such as this (Doc. No. 1, ¶14F)); failed to monitor inmates' activities (Doc. No. 1, ¶14H)); failed to make reasonable efforts to protect the safety and well-being of the people/inmates whom they were responsible (Doc. No. 1, ¶14I)); and failed to provide sufficient funding and staff to monitor and protect the inmates at the Eunice City Jail, including John Paul Davis (Doc. No. 1, ¶14J)).

In *Converse v. City of Kemah, Texas*, 961 F.3d 771, 775 (5th Cir. 2020), the Fifth Circuit stated it has "repeatedly held that pretrial detainees have a Fourteenth Amendment right to be protected from a known risk of suicide." *See also Hare v. City of Corinth* (*Hare II*), 74 F.3d 633, 639 (5th Cir. 1996). And it is well-settled law that jail officials violate this right if "they had gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference." *Hare II*, 74 F.3d at 650; *Jacobs*, 228 F.3d at 393.

In *Partridge v. Two Unknown Police Officers of City of Houston, Tex.*, 791 F.2d 1182, 1188 (5th Cir. 1986), the plaintiffs alleged that the Houston Police Department had a custom of inadequate monitoring of suicidal detainees which amounted to a policy of denying them medical care. In addition, the complaint

alleged that the city and the police department failed to "adequately train the jail personnel to handle arrested citizens with known mental problems." In considering the sufficiency of the allegations in the complaint, the court stated that "[a]rguably, inadequate training of police personnel may be the basis for finding a municipal custom of deliberate indifference to the constitutional rights of citizens."[1] The court further discussed the impact of *Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*) (*per curiam*), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985), on *Monell* issues, as follows:

> The *Bennett* decision spelled out the requirements of *Monell.* To establish a municipal custom, a plaintiff must prove a "persistent, widespread practice of city officials or employees, which ... is so common and well settled as to constitute a custom that fairly represents municipal policy." **The governing body of the city must have actual or constructive knowledge of the custom. The Partridges' complaint is** *arguably* **deficient in the light of** *Bennett.* **It alleged that the Police Department's custom of inadequate care for suicidal detainees was "familiar" to the city. Unless an expansive construction is given to the term "familiar", the complaint does not specifically allege that the custom was so persistent, widespread, common, and well settled as to represent municipal policy.**

*Partridge*, 791 F.2d at 1188–89 (internal citations omitted) (emphasis added).

---

[1] *See also Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (in reversing district court's denial of summary judgment on issue of qualified immunity, court confirmed that, to prove deliberate indifference, plaintiff must show that defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," that the defendant actually "dr[e]w the inference," and that the defendant "disregard[ed] that risk by failing to take reasonable measures to abate it.").

In the instant case, in Paragraph 16 of her Complaint, the plaintiff alleges that the City of Eunice "knew or should have known about the policies, procedures and practices at the Eunice City Jail."  While it is clear that the last sentence in Paragraph 16 is contrary to the law, as municipalities cannot be held liable on a theory of respondeat superior, after review of the pleadings, the undersigned concludes that the plaintiff has stated a claim against the City of Eunice inasmuch as the plaintiff has alleged that the City itself had a policy or custom of not properly monitoring inmates at the Eunice Jail who are at risk of suicide and of placing inmates who are at risk of suicide in cells and common areas where they are a danger to themselves; that the named defendants, including the Mayor of Eunice, knew of this policy; that a constitutional violation occurred; and the custom or policy served as the moving force behind the violation.  At this stage of the litigation, this Court must accept the allegations as true.  While the plaintiff may be unable to prove these allegations at a later stage of the litigation, for the purposes of this motion, the undersigned concludes that the claims against the City of Eunice should not be dismissed.

### 3. **Individual capacity claims against Scott Fontenot, Randy Fontenot and Richard Daigle**

The plaintiffs have alleged that the individual defendants were deliberately indifferent to John Paul Davis' obvious need for protection from self-inflicted harm, and the named defendants are individually liable for failure to protect the decedent. The defendants argue that the plaintiff has not specifically pled the precise alleged

constitutional violations with respect to each defendant, but rather, has improperly grouped the defendants together for purposes of identifying these alleged violations. The defendants also seek qualified immunity with respect to these claims.

As an initial matter, the undersigned notes that although Rule 12(b)(6) and Rule 8(c) do not preclude the assertion of a defense in a motion to dismiss filed pursuant to Rule 12(b)(6), the Fifth Circuit and federal district courts within the circuit have noted that "a motion under Fed. R. Civ. P. 12(b)(6) is certainly a poor vehicle for resolving claims of qualified immunity." *Reitz v. City of Abilene*, 2017 WL 3046881, at *12 (N.D. Tex. May 25, 2017), *report and recommendation adopted*, 2017 WL 3034317 (N.D. Tex. July 17, 2017). *See also Thomas v. City of Desoto*, 2002 WL 1477392, at *1 n.1 (N.D. Tex. July 8, 2002) (accepting recommendation of Mag. J.). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) (cited with approval in *Thomas*). Plaintiffs simply do not need to "anticipate the immunity defense" when filing their complaint. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *accord Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) (holding that plaintiffs are not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12").

Because the individually sued defendants seek qualified immunity in response to these claims, the Court must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. *See Hare v. City of Corinth,* 135 F.3d 320, 325 (5th Cir.1998), *citing Colston v. Barnhart,* 130 F.3d 96, 99 (5th Cir.1997).

Regarding the first inquiry, the plaintiffs have stated a claim under currently applicable law for the denial of Davis's substantive due process rights.  Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs.  *See Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  A pretrial detainee's due process rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare II,* 74 F.3d at 639 (citing *City of Revere v. Massachusetts Gen. Hosp.***,** 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)).  In *Hare II,* the Fifth Circuit noted that "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Id.* at 650.  *See also Converse v. City of Kemah, Texas*,

961 F.3d 771, 775 (5th Cir. 2020) (finding pretrial detainees have a Fourteenth Amendment right to be protected from a known risk of suicide).

The plaintiff has alleged that the individual defendants were deliberately indifferent to Davis's obvious need for protection from self-inflicted harm. It is well-settled in the law that "a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir.1996), *citing Hare II*, 74 F.3d at 647–48). By alleging deliberate indifference to Davis's clearly established Fourteenth Amendment rights, the plaintiff has cleared the first hurdle in defeating the defendants' qualified immunity defense.

The second part of the qualified immunity analysis is to determine whether the defendants' conduct was objectively unreasonable in light of clearly established law at the time of Davis's suicide. It is clearly established that officials will only be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established constitutional rights if they "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393–94 (5th Cir. 2000), *citing Hare II,* 74 F.3d at 650; *see also Flores v. County of Hardeman,* 124 F.3d 736, 738 (5th Cir.1997) ("A detainee's right to adequate protection from known

suicidal tendencies was clearly established when Flores committed suicide in January 1990."). Thus, this Court must hold the defendants to the standard of subjective deliberate indifference in determining whether their conduct was objectively reasonable. *See Hare III,* 135 F.3d at 327. The determination of the objective reasonableness of particular conduct in light of the subjective deliberate indifference standard is a question of law for the court. *See id.* at 328.

Therefore, under well-established caselaw, in order to show a civil rights violation by the Mayor, Chief, and Deputy Chief, the plaintiff must establish that each defendant she is suing had actual subjective knowledge that her brother was at risk of committing suicide, and also then show that each defendant was deliberately indifferent to that known risk of suicide. The Fifth Circuit has repeatedly stated, that deliberate indifference is an extremely high standard to meet. *Hyatt v. Thomas*, 843 F.3d 172, 180 (5th Cir. 2016). Furthermore, even if the official has actual subjective awareness of a suicide risk, as long as the official takes some reasonable step to address the risk, the official will not be liable if the prisoner is eventually successful in killing themselves. *Hyatt*, 843 F.3d at 177-178, *citing Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

In the instant case, defendants allege that the plaintiff has improperly "grouped" the defendants for purposes of her allegations against them, and that such improper grouping does not satisfy the requirements of the qualified immunity

18

analysis in terms of pleading constitutional violations.  Defendants allege that there are no factual allegations in the entirety of the Complaint which state that the Mayor, Chief, or Deputy Chief were present at the jail when any of the events leading up to Davis' suicide occurred; that the Mayor, Chief or Deputy Chief had specific actual awareness that Davis was at risk of harming himself; or that Davis had a serious medical problem requiring medical attention.  The plaintiff responds that because discovery has yet to commence, at this premature stage there is no way of positively knowing whether the Mayor, Chief, or Deputy Chief were aware that John Paul Davis was at risk of harming himself, or that he had a serious medical condition requiring treatment.

After review of the pleadings and briefs, the undersigned concludes that the plaintiffs' allegations, if true and if the defendants had knowledge of the risks involved, are specific enough to allow the Court to draw the reasonable inference that the defendants would be liable for the harm alleged and that, if true, the plaintiff would defeat a qualified immunity defense.  Nevertheless, the undersigned finds that the plaintiff has provided no facts demonstrating that the Mayor, Chief, or Deputy Chief had actual subjective awareness that Davis was at risk of committing suicide. Additionally, while the plaintiff has set forth specific facts regarding the alleged actions or inactions that she claims are violative of the decedent's constitutional rights, the undersigned finds that the defendants' argument that the plaintiff has

improperly grouped the defendants for purposes of liability carries some weight. Under established caselaw, the plaintiff is required to allege her claims with particularity with respect to each named defendant. Rather than dismiss the claims of the plaintiff with respect to these individual defendants, and inasmuch as the defendants have sought the alternative remedy of allowing the plaintiff to amend her complaint, the undersigned recommends that the plaintiff be permitted to amend her complaint to satisfy the requirements of Section 1983 and the controlling jurisprudence.

## III.    CONCLUSION

Considering the foregoing,

**IT IS RECOMMENDED** that the Motion to Dismiss for Failure to State a Claim and/or Motion for More Definite Statement [Doc. 7] be GRANTED IN PART AND DENIED IN PART, as explained hereinbelow.  IT IS RECOMMENDED that defendants' motion to dismiss the plaintiff's claims against Mayor Fontenot, Chief, Fontenot, and Deputy Chief Daigle in their official capacities be GRANTED, and that these claims be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss the plaintiff's claims against the City of Eunice be DENIED.

IT IS FURTHER RECOMMENDED that the defendants' motion to dismiss the plaintiff's claims against Mayor Fontenot, Chief Fontenot, and Deputy Chief

Daigle in their individual capacities be DENIED at this time.  IT IS ORDERED that the plaintiff shall amend her complaint with 21 days to more specifically allege her claims against these defendants, including alleging the specific constitutional provisions each defendant is alleged to have violated, and giving attention to the subjective knowledge element required by the qualified immunity analysis.

IT IS FURTHER RECOMMENDED that defendant's motion for more definite statement be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 4th August, 2020 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE